UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ISRAEL GARCIA PANTOJA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, *et al.*,<br>Respondents. | CASE NO. 2:26-cv-02247-GJL<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Israel Garcia Pantoja ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On June 29, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 9, 12.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **ORDERS** that the habeas Petition (Dkt. 1) is **DENIED without prejudice** to Petitioner's right to refile a future habeas petition under appropriate circumstances.

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 6.

## I. BACKGROUND

Petitioner, a 46-year old citizen of Mexico, entered the United States without inspection at an unknown time and location and has lived continuously in the country for two decades. Dkt. 1 ¶ 34. On November 3, 2025, agents of the U.S. Border Control ("USBP") arrested Petitioner without prior notice in Portland, Oregon. Dkt. 11 ¶ 6; *see also* Dkt. 10-2, Ex. B (Form I-213). As the basis for this Petition, Petitioner claims that USBP agents approached the vehicle Petitioner had been driving, his brother's car, and demanded he roll his window down completely and open the door. Dkt. 1 ¶ 1; 36–39. Petitioner asked for the identity of the agents, as they and their vehicles bore no identifying features of law enforcement, and whether they had a warrant. *Id.* ¶¶ 37, 39. In response, the agents broke Petitioner's window, forced him from the vehicle, handcuffed him, and beat him until he felt his ribs crack. *Id.* ¶¶ 40–43. Petitioner subsequently struggled to breathe and lost consciousness. *Id.* ¶ 43. Petitioner was transported to the hospital where he was diagnosed with three fractured ribs, a laceration near his ear, and multiple abrasions on his chest and head. *Id.* ¶ 44. After two days in the hospital, Petitioner was transferred to NWIPC, where he has since remained. *Id.* ¶ 46.

In support of their Return, Respondents submitted a Form I-213, Record of Deportable/Inadmissible Alien, containing an account of the encounter from an unidentified agent that mainly confirms Petitioner's narrative, but claims Petitioner resisted the agents' attempts to remove him from the parked vehicle and attempted to reach for an agent's firearm in the ensuing struggle to remove Petitioner from his seat. Dkt. 10-2 at 3–5, Ex. B. Petitioner denies the additional details provided by the unidentified agent in the I-213. *See* Dkt. 12.

On November 5, 2025, USBP served Petitioner with a warrant for his arrest. Dkt. 11 ¶ 7; Dkt. 10-3, Ex. C (Warrant for Arrest of Alien). In the Petition, Petitioner asserts that also on

November 5, 2026, a removal case was opened against Petitioner, but the case was closed on December 3, 2025, for failure to prosecute. Dkt. 1 ¶ 49.

On December 20, 2025, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging Petitioner as inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as being present in the United States without being admitted or paroled. Dkt. 10-1, Ex. A (Notice to Appear). On January 20, 2026, Petitioner appeared, with counsel, before immigration judge ("IJ") John O'Dell at the Tacoma Immigration Court for a master calendar hearing, at which he conceded removability. *See* Dkt. 10-5 at 2, Ex. E (IJ Oral Decision and Order, Jan. 29, 2026). In continued removal proceedings held on January 29, 2026, Petitioner requested voluntary departure. Dkt. 10-4, Ex. D (IJ Order); Dkt. 10-5 at 3, Ex. E. IJ O'Dell denied Petitioner's request for voluntary departure and ordered him removed to Mexico. Dkt. 10-4, Ex. D; Dkt. 10-5 at 6, Ex. E. Petitioner reserved his right to appeal the IJ's decision, and has since filed an appeal to the Board of Immigration Appeals ("BIA") on February 27, 2026. Dkt. 10-4 at 4, Ex. D (IJ Order, Jan. 29, 2026); Dkt. 11 ¶ 13. Petitioner's appeal remains pending. *See id*. ¶ 14.

Prior to his master calendar hearing before an IJ, on January 2, 2026, Petitioner and five other detained noncitizens filed a petition for writ of habeas corpus in this District, challenging their detention under the INA as unlawful. *See Acevedo Gomez, et al. v. Hermosillo*, No. 2:26-cv-00006-TMC, 2026 WL 77338 (W.D. Wash. Jan. 9. 2026). The Honorable Tiffany M. Cartwright granted the petition and ordered, in part, that Petitioner be granted a bond hearing under 8 U.S.C. § 1226(a) within fourteen (14) days of his request for such a hearing. *See id.*, 2026 WL 77338, at *2.

In his Traverse, Petitioner's counsel concedes that they were not aware of Petitioner's prior habeas Petition. Dkt. 12 at 3. Counsel also informed the Court that Petitioner's attorney before the immigration court has now requested the court-ordered bond hearing. *Id*. In a Notice of supplemental facts filed on July 29, 2026, Petitioner's counsel informed the Court that on July 27, 2026, IJ O'Dell held a bond redetermination hearing and denied Petitioner's bond request. Dkt. 16 at 2; Dkt. 16-1, Ex. A (IJ Order, July 27, 2026). Specifically, the IJ found Petitioner failed to establish that he is not a flight risk. Dkt. 16-1 at 2, Ex. A. Further, in his decision, the IJ noted that Petitioner's appeal of the IJ's decision denying Petitioner's application for voluntary departure remains pending before the BIA. *Id*. Also in the Notice, Petitioner's counsel asserts that Petitioner will file an appeal to the BIA seeking review of the IJ's July 27, 2026, decision. Dkt. 16 at 2.

Petitioner has been detained since November 3, 2025, a period of approximately ten (10) months. Dkt. 1 ¶ 54. In his Petition, Petitioner asserts he has no criminal history. *Id*. ¶ 34. However, Petitioner's Form I-213 indicates Petitioner has a 2009 conviction for multiple traffic violations in California, and a 2009 arrest for a violation of a local California ordinance. Dkt. 10-2 at 5, Ex. B.

On June 29, 2026, Petitioner filed this second habeas Petition. Dkt. 1. Petitioner seeks release from custody or, in the alternative, a bond hearing at which the Government has the burden of justifying detention by clear and convincing evidence. *Id*. at 22. Respondents filed a Return on July 14, 2026, and Petitioner filed his Traverse on July 20, 2026. Dkts. 9, 12.

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28

U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

There is no dispute that Petitioner is subject to discretionary custody under 8 U.S.C. § 1226(a). *See* Dkt. 9 at 4; Dkt. 12. In the Petition, Petitioner argues his November 3, 2025, arrest violated the Fourth and Fifth Amendments, the Administrative Procedure Act ("APA"), the INA and its implementing regulations, *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147 (D. Or. 2026),[2] and the policy regarding warrantless arrests of noncitizens set forth in *Castañon Nava, et al. v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 837–38 (N.D. Ill. 2025) ("*Nava* Broadcast Policy"), because ICE stopped and arrested him without reasonable suspicion or probable cause. Dkt. 1 (Counts 1–7). Petitioner contends the proper remedy for such violations is release from custody or, in the alternative, a bond hearing requiring the Government to justify his detention by clear and convincing evidence. Dkt 1 at 22.

//

//

[2] Beginning in December 2025, immigration officials conducted a large enforcement operation in Portland, Oregon, leading the District Court in Oregon to enter an injunction against the Government preventing same "from enforcing their policy or practice of making warrantless civil immigration arrests in the District of Oregon without a pre-arrest individualized determination by the arresting officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained." *M-J-M-A-*, 822 F. Supp. 3d at 1184. *See* Dkt. 1 ¶¶ 1, 33.

**A. The Petition is Not an Abuse of the Writ**

In their Return, as a threshold issue, Respondents argue the Petition should be dismissed because it is Petitioner's second habeas petition and therefore constitutes an abuse of the writ. Dkt. 9 at 4–6. The Court disagrees.

First, the Court notes the general bar against successive habeas petitions set forth in 28 U.S.C. § 2244 does not apply to a petition such as this one that is filed under § 2241. *See Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000) ("§ 2244(a) bars successive petitions seeking review of the propriety of a detention pursuant to a judgment of a court of the United States[,] and individuals . . . in custody pending the outcome of their immigration proceedings are not detained pursuant to a judgment of a court of the United States.") (internal quotation marks omitted).

Rather than a hard-and-fast rule such as the one prescribed by § 2244, courts in the immigration context are guided primarily by whether a petitioner can "show cause for failing to raise" a claim in a prior petition. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Here, Petitioner's first Petition was a grouped Petition addressing only the common claims of the six (6) petitioners as members of the *Rodriguez Vazquez* Bond Denial Class. *See Acevedo Gomez*, 2026 WL 77338. Because the grouped Petition contained no other information as to the circumstances of each petitioner's arrest and detention and none was required in order to enforce the Bond Denial Class judgment set forth in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025), the Court finds that cause exists for Petitioner's failure to raise in his first Petition the claims he raises here. Accordingly, it is not abuse of the writ for Petitioner to file a second habeas Petition and the Court will consider it.

//

**B. Petitioner is Not Entitled to Relief on the Challenges to the Legality of His Arrest**

All seven counts in the Petition challenge Petitioner's November 3, 2025, arrest as unlawful. *See* Dkt. 1. To the extent Petitioner challenges his arrest as unlawful because it was done without a warrant, Petitioner's claims have merit. The warrant in the record is dated two (2) days after Petitioner's arrest and appears to rely in part on statements made after Petitioner was arrested. Dkt. 10-3 at 2, Ex. C. Post-hoc rationalizations cannot render that warrant valid.

Absent probable cause, immigration officers "must have a reasonable suspicion" to stop individuals and question them "about their citizenship and immigration status . . . [and] any further detention . . . must be based on . . . probable cause." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82, 884 (1975) ("[T]he Fourth Amendment . . . forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens."). "To this end, the Immigration and Nationality Act . . . and its implementing regulations require immigration officers to obtain an arrest warrant before making an arrest for an immigration violation." *M-J-M-A-*, 822 F. Supp. 3d at 1172; 8 C.F.R. § 287.8(c)(2)(ii).

Agents may make warrantless arrests as an exception to the warrant requirement only where the officer, prior to the arrest and with respect to the specific individual to be arrested, "has reason to believe that" the individual is both (1) "in the United States in violation of [immigration laws]" and (2) "likely to escape before a warrant can be obtained[.]" 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). The "reason to believe" requirement is the equivalent of "the constitutional requirement of probable cause." *Tejeda-Mata v. Immigr. Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980).

Here, the account set forth in the I-213 report filed by Respondents does not support that the arresting officers had reason to believe Petitioner was dangerous or likely to escape prior to

an arrest. Further, Respondents have provided no information about the agents' knowledge that could conceivably support probable cause before they decided to arrest Petitioner, aside from identifying the vehicle as belonging to Petitioner's brother, a person without legal status to be in the United States. *See* Dkt. 10-2 at 3, Ex. B.

The remedy for an unlawful arrest is typically not the dismissal of a proceeding and not release by way of habeas corpus petition. *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984); *Streeter v. Craven*, 418 F.2d 273, 274 (9th Cir. 1969) (*per curiam*) ("The district court properly concluded that defects in an arrest are not cognizable in habeas corpus.").

Moreover, habeas tests the lawfulness of a detainee's present custody. *See Alvarez-Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir. 1991) ("[W]e are concerned here only with the legality of Alvarez–Mendez's present detention. Because this case involves a petition for the writ of habeas corpus, and not a claim for damages for illegal detention, the only issue before us is whether Alvarez–Mendez's detention is illegal today."). As noted above, Petitioner is now the subject of an immigration judge's order of removal. Dkt. 10-4, Ex. D; Dkt. 10-5, Ex. E. Petitioner's appeal of the IJ's Order of removal is currently pending before the BIA. *See* Dkt. 11 ¶¶ 13–14. Moreover, in his Traverse, Petitioner expressly states, "The substance and validity of the charges and removal determination in the proceedings ultimately filed are on review with the [BIA], the appropriate agency, *and not challenged here*." Dkt. 12 at 6 (emphasis added).

Accordingly, habeas relief is not warranted on Petitioner's unlawful arrest claims and is **DENIED**.

//

//

**C. Petitioner Fails to Establish He Was Entitled to a Pre-Detention Hearing Under the Facts of this Case**

In the Petition, Petitioner also argues that Respondents violated Petitioner's right to due process by arresting and detaining him without an individualized custody determination that provided any notice or opportunity to be heard. *See* Dkt. 1 ¶ 62; Dkt. 12 at 8–9. Additionally, Petitioner claims the delay in issuing the NTA similarly violated his due process rights. Dkt. 1 ¶¶ 66–69.

At the time of his arrest, Petitioner was not engaged in active removal proceedings or subject to any conditions of release. *See* Dkt. 1. Further, as set forth above, following the issuance of Petitioner's NTA, Petitioner filed a grouped habeas petition in this Court challenging their detention under the INA as unlawful. *See Acevedo Gomez*, 2026 WL 77338. United States District Judge Tiffany M. Cartwright granted the petition and ordered Respondents to either provide Petitioner with a bond hearing under § 1226(a) upon his request or release him. *See id.*, 2026 WL 77338, at *2. Thus, Respondents have been ordered to either comply with due process or release Petitioner.

Because Respondents have been ordered to comply with the statutory procedures of § 1226, the Court **DENIES** Petitioner's due process argument here. *See Cotoc Yac De Yac v. Hermosillo*, No. 2:25-cv-02593-DGE-TLF, 2026 WL 124334, at *4–5 (W.D. Wash. Jan. 16, 2026) (denying due process claim where petitioner's previous removal proceedings had been terminated and petitioner had no supervision requirements).

**D. Petitioner Has Received the Alternative Request for Relief (Bond Hearing)**

At the time of the filing of his Petition, Petitioner had not participated in the court-ordered bond hearing. *See* Dkt. 1. In fact, Petitioner's counsel was unaware that Petitioner had

been granted such relief on January 9, 2026, as part of the Bond Denial Class. *See* Dkt. 12 at 3. Further, in the Notice of supplemental facts filed in this case, Petitioner informed the Court that on July 27, 2026, an IJ held a bond hearing under § 1226(a), where the IJ determined Petitioner to be a flight risk and denied him bond. Dkt. 16 at 2; Dkt. 16-1, Ex. A. Thus, the Court determines that Petitioner has already received the alternative relief he requests in this Petition.

If Petitioner wishes to challenge the IJ's decision, he must do so either by appealing it to the BIA or by bringing a new habeas petition if he can demonstrate that appeal to the BIA would be futile.[3] *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required."). While an IJ's factual determinations are unreviewable, a district court may review an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)).

Accordingly, the court determines that Petitioner has not provided by preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to a bond hearing. 8 U.S.C. § 2241(c); *Davis*, 384 F.3d at 638. Petitioner's alternative request for relief is therefore **DENIED**. Further, because the Court denies this requested habeas relief for the reasons set forth above, it declines to address the arguments as to the requirement of exhaustion of administrative remedies.

//

[3] In the Notice, Petitioner indicates he will appeal the BIA's decision. Dkt. 16 at 2. Further, while Petitioner includes a single statement regarding the futility of an appeal to the BIA in the Notice, this statement is not properly presented in these habeas proceedings and, thus, the Court will not address this issue. *See id*.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. 1) is **DENIED without prejudice** to Petitioner's right to file a future habeas petition under appropriate circumstances.

Dated this 14th day of September, 2026.

Grady J. Leupold
United States Magistrate Judge